IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AARON MCKEE, SARAH MCKEE, | § | |
| | § | |
| *Plaintiffs,* | § | SA-22-CV-01110-XR |
| | § | |
| vs. | § | |
| | § | |
| CHUBB LLOYDS INSURANCE | § | |
| COMPANY OF TEXAS, | § | |
| | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation concerns Defendant Chubb Lloyds Insurance Company of Texas's Motion for Partial Summary Judgment [#35]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#51]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion be denied.

## I.  Background

This case arises out of Winter Storm Uri, a severe winter storm causing widespread damage across Texas in February 2021. Plaintiffs Aaron McKee and Sarah McKee ("Plaintiffs") own a home located at 405 Eldon Road, Terrell Hills, Texas, 78209, which was insured under a homeowners' policy (Policy Number 15020643-01) issued by Defendant Chubb Lloyds Insurance Company of Texas ("Chubb") at the time of the storm. Plaintiffs filed suit in Bexar County, Texas,

on September 1, 2022.  Chubb filed its Original Answer on October 10, 2022, and removed the suit to this Court shortly thereafter.

Plaintiffs' Original Petition, which remains the live pleading, alleges that Winter Storm Uri resulted in substantial interior water damage to their home due to freezing temperatures, power outages, and bursting frozen water pipes.  According to Plaintiffs, they reported their loss to Chubb and its agents, but Chubb mishandled the claim and undervalued the estimated replacement cost value to repair the damage at approximately $1.2 million.  Plaintiffs claim that the proper cost to restore their home to its pre-loss condition is approximately $7.1 million, which includes the cost of total replacement of the Property's electrical and plumbing systems.

Plaintiffs plead causes of action for breach of contract, violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, and bad faith.  Plaintiffs allege that they are entitled to damages in the amount of $7.1 million, plus any investigative and engineering fees incurred in the claim process, less any prior payments and the deductible, as well as interest. Plaintiffs also allege they are entitled to additional damages under the Texas Deceptive Trade Practices Act ("DTPA") and exemplary damages under Chapter 541 of the Texas Insurance Code due to Chubb's knowing and intentional conduct.

The parties engaged in written discovery, and the discovery period closed on January 21, 2024.  This case is set for jury selection and trial on April 29, 2024.  Chubb has filed a motion for partial summary judgment on the issue of damages.[1]  Plaintiffs have filed a response in opposition to the motion [#43], to which Chubb filed a reply [#48].  The motion is ripe for the Court's review.

---

[1] Although Chubb titles its motion a motion for partial summary judgment, it is unclear what claims would be left for trial were the Court to grant the motion as to all issues raised in the motion.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion" and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted."  *Westphal*, 230 F.3d at 174.

### III.  Analysis

Chubb's motion for partial summary judgment focuses on Plaintiffs' claimed damages. Chubb argues that it is entitled to summary judgment on Plaintiffs' breach-of-contract claim as to the dwelling portion of the claim because Plaintiffs cannot show damages exceeding Chubb's prior payments under the Policy.  This argument has two parts.  First, Chubb argues the Policy contractually limits Plaintiffs' recovery for breach of contract to the "actual cash value" of their covered loss, and Plaintiffs' damages model only presents evidence as to their repair or replacement costs.  Second, Chubb argues that Plaintiffs cannot prove that they are entitled to recover the cost of full replacement of their plumbing and electrical systems.  As to Plaintiffs' extracontractual claims, Chubb argues that Plaintiffs' claims for exemplary, treble, or other extracontractual damages fail as a matter of law because Plaintiffs have not asserted an injury independent of the contract.  None of these arguments entitle Chubb to summary judgment.

First, Chubb is not entitled to summary judgment on Plaintiffs' breach-of-contract claim based on the contractual argument that the Policy limits Plaintiffs' recovery to "actual cash value" or that Plaintiffs are required to provide expert testimony on "actual cash value" to survive summary judgment.  Chubb has failed to provide the Court with any binding authority to support this argument.  Second, although the Court has determined that several of Plaintiffs' witnesses are not permitted to testify as experts on the need to replace the plumbing and electrical systems (*see* Order [#61]), these individuals may still provide fact testimony on this issue and on the extent of Plaintiffs' loss from storm-related damage.

Finally, the Court should deny Chubb's motion as to Plaintiffs' extracontractual damages. The only argument Chubb advances for summary judgment on these claims is that Plaintiffs fail to allege an injury independent of their injuries resulting from Chubb's alleged breach of contract.

Because Plaintiffs' breach-of-contract claim survives Chubb's motion for summary judgment, Chubb has not established as a matter of law that the lack of independent injury is fatal to Plaintiffs' request for extracontractual damages.

**A.      Chubb is not entitled to summary judgment on Plaintiffs' breach-of-contract claim based on its "actual cash value" argument.**

Plaintiffs' Original Petition asserts a cause of action for breach of contract, which alleges that Chubb breached its contractual obligations under the Policy "by failing to properly pay Plaintiffs policy benefits for the cost to properly repair the subject damage to their property." (Orig. Pet. [#1-4], at 11.)  Plaintiffs also allege Chubb breached the Policy's provisions "on timely investigating, adjusting, and paying Plaintiffs' storm damage insurance claim." (*Id.* at 12.)  Based on these claims, Plaintiffs seek "the unpaid cost to properly repair the storm damage to Plaintiffs' property in the amount of $7,109,134.26, plus any investigative and engineering fees incurred during the claim process and less any prior payments and the deductible." (*Id.* at 16–17.)  Plaintiffs therefore request compensation for Chubb's alleged breach of contract in the amount of the estimated cost to repair all storm-related damage, less Chubb's prior payments and their deductible.  Chubb argues Plaintiffs cannot recover these claimed damages because the Policy limits Plaintiffs to recovery of a lesser amount—the "actual cash value" of their loss—and Plaintiffs fail to provide any evidence based on this framework for damages.  Chubb has not demonstrated that it is entitled to summary judgment on this basis.

Texas law governs Plaintiffs' breach-of-contract claim because this case arises under the Court's diversity jurisdiction. *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 196 (5th Cir. 2014) (per curiam).  In Texas, the elements of a claim for breach of contract are (1) a valid contract between the plaintiff and the defendant, (2) performance or tender of performance by the plaintiff, (3) breach by the defendant, and (4) damage to the plaintiff as a result of the breach. *Lawyers Title*

*Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014) (citing *Ostrovitz &*

*Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 387 (Tex. App.—Dallas 2012, no pet.)).

Chubb's motion for partial summary judgment purports to challenge Plaintiffs' ability to

raise a fact issue as to the third and fourth elements of their breach-of-contract claim.  But really

Chubb is advancing solely an argument regarding damages and asking the Court to infer that a

failure to provide sufficient evidence of damages means Plaintiffs have also failed to establish

breach of the Policy.  Chubb asserts that it did not breach the contract because it has already

compensated Plaintiffs for the damages to which they are entitled under the contract by settling

the claim for $1,245,887.58—the "actual cash value" of their covered loss according to Chubb.

Chubb does not advance any substantive argument regarding why its settlement of Plaintiffs' claim

demonstrates as a matter of law that it did not breach the Policy by underpayment or otherwise.

The undersigned treats Chubb's "actual cash value" argument as one addressing damages only.

Chubb's contractual argument focuses on the Policy's Loss Settlement clause.  The portion

of the Loss Settlement clause cited by Chubb in its motion provides the following:

> We will pay only the actual cash value of the damaged building structure(s)
> until repair or replacement is completed. Repair or replacement must be
> complete within 365 days after loss unless you request in writing that this
> time limit be extended for an additional 180 days. Upon completion of
> repairs or replacement, we will pay the additional amount claimed under
> replacement cost coverage, but our payment will not exceed the smallest of
> the following:
>
> (i)     the limit of liability under the policy applicable to the damaged or
>         destroyed building structure(s);
>
> (ii)    the cost to repair or replace that part of the building structure(s)
>         damaged, with the material of like kind and quality and for the same
>         use and occupancy on the same premises; or
>
> (iii)   the amount actually and necessarily spent to repair or replace the
>         damaged building structure(s).

6

> This payment basis will remain your payment basis until construction is completed and you and we agree on the appropriate limit of liability for your dwelling or other structures.

(Policy [#35-1], at 61.)  The relevant language of the provision provides that Chubb "will pay only the actual cash value of the damaged building structure(s) until repair or replacement is completed" and that "[r]epair or replacement must be completed within 365 days after loss unless [the insureds] request in writing that this time limit be extended for an additional 180 days." (*Id.*)  Chubb argues that because more than 365 days have elapsed since February 16, 2021—the date of loss—and it is undisputed that Plaintiffs have performed extensive repairs (but have not yet completed them), they cannot measure their damages on a replacement or repair cost basis and are only entitled to the "actual cash value" of the damage to their dwelling.

Chubb's contractual argument is only addressed cursorily in its motion.  In the short two paragraphs devoted to this argument, Chubb does not define "actual cash value" under Texas law and does not cite any governing law (either from Texas or federal courts applying Texas law) in support of its interpretation of the Policy.  Nor has it directed the Court to any case from the Fifth Circuit granting an insurer summary judgment on this basis.  (And the undersigned was unable to locate any authority supporting Chubb's position through her own research).  In fact, Chubb cites only one case in support of its argument—a recent opinion from the Tenth Circuit Court of Appeals in an insurance dispute governed by Oklahoma law.  *See Frontline Fellowship Inc. v. Brotherhood Mut. Ins. Co.*, No. 22-6202, 2023 WL 5949374 (10th Cir. Sept. 13, 2023) (affirming grant of summary judgment based on failure of insured to provide evidence of "actual cash value" of loss).  This out-of-circuit opinion is not instructive on the interpretation of the Policy underlying this case and does not govern the legal issues before the Court.

In Texas, insurance policies are contracts that establish the respective rights and obligations to which an insurer and its insured have mutually agreed. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018). Texas courts construe insurance policies using the same rules that govern the construction of any contract. *Id.* The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument and to ensure contract terms are construed according to "the ordinary, everyday meaning of the words to the general public." *Exxon Mobil Corp. v. Ins. Co. of State*, 568 S.W.3d 650, 657 (Tex. 2019) (quoting *Progressive Cnty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003)). The most important consideration in interpreting the meaning of a contract is "the agreement's plain, grammatical language." *Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 148 (Tex. 2020). To that end, the terms used in the policy are given their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning. *Exxon Mobil Corp.*, 568 S.W.3d at 657. Context is important, and this Court must examine the entire writing and endeavor to harmonize and give effect to all the provisions so that none are rendered meaningless. *Id.*

Chubb, of course, cites only an excerpt from the Policy's Loss Settlement clause. If the Court views the clause as a whole, as is required when construing a contract, Chubb's argument is rendered meritless. The Loss Settlement clause is found in a portion of the Policy titled "Extended Replacement Cost Endorsement," which generally sets forth Chubb's limit of liability and payment for covered losses as the "reconstruction cost" of an insured dwelling. (Policy [#35-1], at 60.) Throughout the Loss Settlement clause, "reconstruction cost" or "replacement cost" is used as the payment basis by which compensation due under the Policy is calculated. (*Id.* at 60–61.) The Policy then specifies that until repair or replacement is completed, Chubb is only required to pay

"the actual cash value" of the damage.  (*Id.* at 61.)  Once repair or replacement is complete, Chubb will pay the additional amount claimed under "replacement cost coverage."  (*Id.*)

"Actual cash value" is not defined by the policy.  But under Texas law, the term "actual cash value" is interpreted to be synonymous with "fair market value."  *See Ghoman v. N.H. Ins. Co.*, No. 3-01-CV-0092-BD(L), 2001 WL 1112535, at *4–6 (N.D. Tex. Sept. 6, 2001) (citing *Great Tex. Cnty. Mut. Ins. Co. v. Lewis*, 979 S.W.2d 72, 74 (Tex. App.—Austin 1998, no pet.); *Guaranty Cnty. Mut. Ins. Co. v. Williams*, 732 S.W.2d 57, 60 (Tex. App.—Amarillo 1987, no writ); *U.S. Fire Ins. Co. v. Stricklin*, 556 S.W.2d 575, 582 (Tex. Civ. App.—Dallas 1977), writ ref'd n.r.e., 565 S.W.2d 43 (Tex. 1978)). "Fair market value" is the price a willing purchaser who is under no obligation to buy would pay to a willing owner who is under no obligation to sell.  *City of Harlingen v. Est. of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001).  This price can be quantified in one of three ways: (1) comparable sales; (2) the income capitalization approach; or (3) the cost of repair or replacement less depreciation.  *See Religious of the Sacred Heart of Tex. v. City of Houston*, 836 S.W.2d 606, 615–16 (Tex. 1992).

Plaintiffs' replacement or repair costs are thus not irrelevant to the "actual cash value" of their loss.  Their replacement or repair costs are essential to measuring damages.  If Plaintiffs prevail at trial on their breach-of-contract claim, Chubb may argue that Plaintiff should be contractually limited to recover "the actual cash value" of their loss on the basis that their repairs were not timely completed under the Policy.  If Chubb prevails on this argument, damages will be calculated based on the cost of repair or replacement (that Plaintiffs prove to have been reasonable and necessary to restore their dwelling to pre-storm condition) less depreciation.  Chubb's "actual cash value" argument is therefore essentially an argument that Plaintiffs lack evidence, such as expert testimony, regarding how to apply depreciation percentages to their repair or replacement

cost evidence.  Chubb has not provided any authority that Plaintiffs are required to proffer such evidence at this stage of the proceedings.

Although damages are an essential element of a breach of contract action in Texas, *see Smith Int'l., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007), Chubb points to no binding authority that absent expert opinion on *depreciation*, an insured's breach-of-contract claim warrants dismissal on summary judgment.  At least one other district court in the San Antonio Division has rejected this argument.  *See Umang Residency LLC v. Tri-State Ins. Co. of Minn.*, No. 5-18-CV-01107-FB-RBF, 2020 WL 3545659, at *3 (W.D. Tex. June 30, 2020), *report and recommendation adopted*, No. SA-18-CV-1107-FB, 2020 WL 13199269 (W.D. Tex. Sept. 30, 2020).  As noted in *Umang*, it is not even clear that Plaintiffs would bear the burden of proof on establishing "actual cash value" (replacement cost less depreciation) if relevant at trial.  *Id.*  At least one Texas court has concluded that similar policy language regarding "actual cash value" reflects a limitation on an insurer's liability for which the insurer bears the burden of proof—and is not a measure of damages.  *See Allen v. State Farm Lloyds*, No. 05-16-00108-CV, 2017 WL 3275912, at *12 (Tex. App.—Dallas Aug. 1, 2017, pet. denied) ("And while the loss settlement endorsement limits the initial payment to the actual cash value of the damaged property, actual cash value is not the measure of damages for which the policy provides coverage.  Instead, this language is . . . a limitation on State Farm's liability, for which State Farm, not the Allens, bore the burden of proof.").  Chubb has not presented the Court with any binding authority imposing the burden of proof on Plaintiffs to demonstrate "actual cash value" through expert testimony on depreciation, and the Court should decline to do so here.

Importantly, Chubb has not argued that Plaintiffs have no evidence of contractual loss. Chubb should not be permitted to establish lack of breach through the Policy's Loss Settlement

clause.  If Chubb did breach the insurance policy by underpaying Plaintiffs' claim, "then it's hard to understand why it still gets to benefit from policy provisions covering how to measure a loss." *Umang Residency*, 2020 WL 3545659, at *3.  "Once a contract has been materially breached, a party typically can no longer demand performance under it."  *Id.* (citing *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) ("A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform.").

Moreover, there is an actual dispute over whether Plaintiffs suffered damages in excess of Chubb's settlement payments.  Plaintiffs have presented the Court with summary judgment evidence that they have already spent approximately $4.8 million on repairs to their home connected with the storm.  (Alyfantis Decl. [#42-1], at ¶¶ 6, 14; McKee Dep. [#44], at 797, 81:13–15.)  Chubb has made payments to Plaintiffs in the amount of $1,245,887.58 to settle their insurance claim.  There is a tremendous disparity between the parties' evidence and assessment of Plaintiffs' storm-related losses to their dwelling.  Although Chubb argues Plaintiffs' evidence on replacement and repair costs is self-serving and conclusory, the undersigned is not persuaded that Plaintiffs' evidence of loss is inadmissible as to Plaintiffs' out-of-pocket costs incurred repairing and replacing damage following the storm.  Nicolette Alyfantis, though unqualified to testify as an expert on the need for replacement of the electrical and plumbing systems (*see* Order [#61] and discussion *infra*), is the general contractor Plaintiffs' retained to inspect, oversee, solicit bids, and make repairs to Plaintiffs' home after the storm.  (Expert Designation [#33-1], at 2.)  Her testimony as a fact witness, as well as the testimony of Mr. McKee, is of course relevant and admissible as to Plaintiffs' damages.

In summary, Chubb has not established that Plaintiffs are required to proffer evidence on depreciation and "actual cash value" to survive summary judgment. In the event Plaintiffs prove that Chubb breached the Policy by underpayment of their insurance claim, they will also bear the burden of proving the extent of their damages. This "is a question left for a later date; it is not a basis on which to grant summary judgment for [Chubb]." *Umang Residency*, 2020 WL 3545659, at *3. The Court should therefore deny Chubb's motion for summary judgment based on its "actual cash value" argument.

**B.    A fact issue remains on the extent of the damage to Plaintiffs' plumbing and electrical systems.**

A significant portion of Plaintiffs' claim for $7,109,134.26 in damages is the estimated $1,584,636.00 and $1,570,689.00 for replacement of Plaintiffs' electrical and plumbing systems, respectively. (Electrical Quote [#35-6]; Plumbing Quote [#35-7].) Chubb argues that Plaintiffs cannot prove that their residence suffered storm-related damage warranting a complete replacement of these systems. Chubb's argument relies on reports from two retained engineering experts—Cory Walker of Walker Engineers, PLLC (a structural engineer) and Jamie Milks of Nelson Forensics, LLC (an electrical engineer)—who inspected Plaintiffs' residence in December 2021 and January 2022 and concluded that the water damage from the storm did not warrant replacement of these systems. (Walker Report [#35-9]; Milks Ltr. [#35-8].) Walker concluded that only one section of Plaintiffs' plumbing ruptured from the storm and all other leaks were in appliances or outside the home. (Walker Report [#35-9], at 8.) Milks concluded that the electrical system was stable and only required replacement of the two branch circuits located beneath the outside northwest balcony, not the entire electrical system. (Milks Ltr. [#35-8], at 18.) Chubb claims that Plaintiffs have failed to designate any expert (satisfying the requirements of Rule 702 of the Federal Rules of Evidence) to provide testimony on the electrical and plumbing systems to

counter these findings.  This is also not a basis for awarding Chubb summary judgment on this portion of Plaintiffs' theory of damages.

As already noted, Plaintiffs, as the insureds, bear the burden of proving the extent of their loss.  *Ayoub v. Chubb Lloyds Ins. Co. of Tex.*, 641 Fed. App'x 303, 307 (5th Cir. 2016).  Plaintiffs have not designated any engineering expert to provide testimony that replacement of the electrical and plumbing systems is required to restore the property to its pre-loss condition.  Nor have they designated an employee of either of the companies furnishing Plaintiffs with the quotes to replace the electrical and plumbing systems—Lamb EJB Construction & Electric or Mr. Plumber—to testify as an expert.  In fact, Plaintiffs' summary judgment response does not cite any evidence from either of these companies supporting their approximately $3 million replacement cost estimate as to these systems—other than their bids to perform the work.  Rather, Plaintiffs rely primarily on testimony and statements of Alyfantis and Gary Pennington—one of the public adjusters working for Blackstone Claim Services retained by Plaintiffs to assist them with their insurance claim.

Plaintiffs attempted to designate Alyfantis and Pennington as experts on plumbing and electrical damage, but the undersigned determined that Plaintiffs failed to establish by a preponderance of the evidence that these individuals have the qualifications to testify as experts on complex plumbing and engineering systems and/or that they based their opinions on sufficient facts or data to be reliable under Federal Rule of Evidence 702.  (Order [#61].)  In light of the exclusion of Alyfantis and Pennington as experts, evidence from expert electricians and plumbers on the extent of damage to the plumbing and electrical systems would certainly strengthen Plaintiffs' damages model.  Yet, Chubb has not presented the Court with any authority that establishes a rule that expert testimony is required to prove the extent of plumbing and electrical

damage attributable to the storm.  As noted *supra*, Alyfantis and Pennington can provide fact testimony on their personal involvement with Plaintiffs' insurance claim as their general contractor and public adjuster.  (*Id.*)

Alyfantis solicited the bids for the replacement of the plumbing and electrical systems in the summary judgment record and may testify regarding her interactions with plumbers and electricians performing repairs (subject to objections based on hearsay and other evidentiary rules) and her solicitation of the specific bids in the record for total replacement of the plumbing and electrical systems.  Alyfantis may also testify regarding the damage she personally observed over the course of the 150 weeks she spent on the property conducting and overseeing repair work, including damage to the plumbing and electrical systems.  (Alyfantis Decl. [#42-1], at ¶ 7 (describing her experience as general contractor); Alyfantis Dep. [#33-4], at 76–83 (detailing personal observations of water pouring into and burning electrical panels and accompanying plumbers in inspections of plumbing leaks.)  Pennington, as one of the retained adjusters, may do the same.  (*See* Pennington Dep. [#33-5], at 64–84 (detailing observations of splits in copper lines of plumbing, water damage to wood flooring, and damage to electrical components of gym equipment).)  That these individuals will not be testifying as plumbing or electrical experts does not render their testimony irrelevant or without any evidentiary value.  To the contrary, due to their extensive experience with Plaintiffs' home and claim over the course of many months, the jury could plausibly find their testimony more credible than the reports of Chubb's experts, who based their findings on more isolated investigations.

In sum, Chubb has not established that it is entitled to summary judgment based on the argument that Plaintiffs cannot prove that the extent of damage to their plumbing and electrical systems requires complete replacement of these systems because they have no experts to testify on

these issues.  Plaintiffs may attempt to prove the extent of their loss as to these systems through fact testimony, and a genuine issue of material fact remains as to the extent of storm-related damage to Plaintiffs' dwelling.

**C.  Because Plaintiffs' breach-of-contract claim should survive summary judgment, their claim for extracontractual damages should survive as well.**

In addition to their breach-of-contract claim, Plaintiffs plead violations of Chapters 541 and 542 of the Texas Insurance Code and the DTPA and breach of the duty of good faith and fair dealing in the settlement of their insurance claim.  *See* Tex. Ins. Code. §§ 541.151, 542.054; Tex. Bus. & Comm. Code § 17.46(b); *see also Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 215 (Tex. 1988), *overruled on other grounds by Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012). Under Texas law, extracontractual tort claims pursuant to the Texas Insurance Code and the DTPA require the same predicate for recovery as bad faith causes of action."  *Watson v. State Farm Lloyds*, 56 F. Supp. 2d 734, 736 (N.D. Tex. 1999) (internal quotation omitted) (citing *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997)).  Based on these claims, Plaintiffs seek additional and exemplary damages based on Chubb's alleged malice and gross negligence in settling Plaintiffs' insurance claim.  (Am. Pet. [#1-4], at 17.)

Chubb argues that Plaintiffs' claims for exemplary, treble, or other extracontractual damages fail as a matter of law because Plaintiffs fail to assert an independent injury.  According to Chubb, because Plaintiffs have not identified an independent injury beyond their alleged entitlement to additional policy benefits, they cannot prevail on their request for extracontractual damages.  Plaintiffs respond that they need not prove an independent injury to create a fact issue on their request for extracontractual damages.  The undersigned agrees.

To receive extracontractual damages, Plaintiff must satisfy either the entitlement-to-benefits rule or the independent-injury rule.  *Kahlig Enters., Inc. v. Affiliated FM Ins. Co.*, No. SA-

20-CV-01091-XR, 2023 WL 1141876, at *6 (W.D. Tex. Jan. 30, 2023).  The entitlement-to-benefits rule provides that "an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as 'actual damages' under the statute if the insurer's statutory violation causes the loss of the benefits."  *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 495 (Tex. 2018).

"On the other hand, extracontractual claims for damages outside of policy benefits must satisfy the independent-injury rule."  *Kahlig Enters.*, 2023 WL 1141876, at *6.  "[I]f an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits."  *Menchaca*, 545 S.W.3d at 499.  These damages, such as mental-anguish damages, must be "truly independent of the insured's right to receive policy benefits."  *Id.* at 500.  "When an insured seeks to recover damages that 'are predicated on,' 'flow from,' or 'stem from' policy benefits," the insured must show that she is entitled to benefits under the policy, or she is barred from recovery.  *Id.* (quoting *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 920–22 (Tex. 2005)).

Plaintiffs concede that they have not asserted an independent injury.  This is not the theory underlying their extracontractual claims.  Rather, they proceed on an entitlement-to-benefits theory, arguing that Chubb acted in bad faith in unreasonably delaying its settlement of Plaintiffs' insurance claim, conducting results-oriented investigations, and unreasonably relying on incomplete reports and evaluations.  Plaintiffs' breach-of-contract claim should survive Chubb's motion for summary judgment, and therefore Plaintiffs need not present an alternative theory beyond their loss of policy benefits for their request for extracontractual damages also to survive summary judgment.

16

If Plaintiffs prevail on their breach-of-contract claim at trial and demonstrate that Chubb violated the Policy by withholding benefits due under the contract, Plaintiffs may also seek additional damages under the Texas Insurance Code. Chapter 541 of the Texas Insurance Code and the DTPA allow a plaintiff who prevails in an action under the Code to obtain "the amount of actual damages, plus court costs and reasonable and necessary attorney's fees," as well as treble damages where "the defendant knowingly committed the act complained of." Tex. Ins. Code § 541.152(b); Tex. Bus. & Comm. Code § 17.50(b)(1). These damages may be recovered without showing any injury independent from the denial of benefits. *Vail v. Tex. Farm Bureau Mut. Insur. Co.*, 754 S.W.2d 129, 136 (Tex. 1988). This is because the "independent-injury rule does not restrict damages an insured can recover under the entitled-to-benefits rule." *Lyda Swinerton Builders, Inc. v. Okla. Surety Co.*, 903 F.3d 435, 452 (5th Cir. 2018).

Accordingly, Plaintiffs' failure to allege an independent injury is not fatal to their claim for additional damages based on their entitlement-to-benefits theory. Chubb's motion for summary judgment on Plaintiffs' request for extracontractual damages should be denied.

## IV.  Conclusion and Recommendation

In summary, having considered Chubb's motion, the response and reply thereto, the summary judgment record, and governing law, the undersigned **recommends** that Defendant Chubb Lloyds Insurance Company of Texas's Motion for Partial Summary Judgment [#35] be **DENIED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified

17

mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 15th day of March, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE